2021 IL App (4th) 180505

NO. 4-18-0505

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| JOHNATHAN E. RAJNER, | ) | No. 17CF873 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Michael L. Atterberry, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court, with opinion.
Justice DeArmond and Steigmann concurred in the judgment and opinion.
Justice Steigmann also specially concurred, with opinion.

**OPINION**

¶ 1    Following a jury trial, defendant, Johnathan E. Rajner, was found guilty of predatory criminal sexual assault of a child and aggravated criminal sexual abuse and was sentenced to two consecutively imposed terms of 15 years and 7 years in prison. Defendant appeals, arguing the trial court violated his right to confrontation when it allowed one of the complaining minor witnesses to testify via closed-circuit television because there was insufficient evidence to find that testifying inside the courtroom would prevent the witness from reasonably communicating or cause her to suffer severe emotional distress. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3                                    A. Information

¶ 4    In November 2017, the State charged defendant with various criminal offenses

based upon his alleged sexual conduct with two minors. The State ultimately proceeded against defendant on one count of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2016)), based upon his alleged sexual conduct with K.R., and one count of aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)), based upon his alleged sexual conduct with Z.P.

¶ 5                                B. Pretrial Proceedings

¶ 6        In February 2018, the State filed a motion to allow the minors to testify via closed-circuit television pursuant to section 106B-5 of the Code of Criminal Procedure of 1963 (Criminal Code) (725 ILCS 5/106B-5 (West 2016)). Later, the then-guardian of K.R., the guardianship administrator for the Department of Children and Family Services, filed a similar motion requesting the same accommodations for K.R.

¶ 7        In March 2018, the trial court, with Judge Debra L. Wellborn presiding, conducted a hearing on the pretrial motions. Prior to commencing the hearing, the State informed the court that, based upon its conversation with Z.P.'s counselor, it would only be requesting accommodations for K.R. The State then called one witness, Kara Moon.

¶ 8        Moon testified she received her bachelor's degree in social work in 2013. Since that time, she has worked for Chaddock, an agency which provides treatment for children who have experienced trauma, abuse, neglect, or other maltreatment. Moon initially worked in one of Chaddock's residential cottages for teenage girls, where she provided therapy services. At the same time, Moon pursued a master's degree in social work. As part of that education, Moon completed a six-month practicum where she worked mostly with crisis management and outpatient therapy clients. In 2017, Moon received a master's degree in social work. After receiving her master's degree, Moon obtained a social work license through the State of Illinois. She then transferred to Chaddock's Family Solutions Department, where she has served as a therapist. Over the five years

she has been at Chaddock, Moon has received extensive trauma-related training.

¶ 9    In September 2017, Moon began seeing K.R. for individual therapy sessions. At that time, K.R. had already completed an intake with another therapist, and it was determined K.R. needed help with adjusting to foster care, processing the trauma she experienced, and managing her emotions from the trauma she experienced. K.R.'s trauma included the reported sexual abuse, as well as significant environmental and emotional neglect. K.R. was diagnosed with adjustment disorder with mixed depression and anxiety. Moon described K.R.'s adjustment disorder as follows:

> "That means that she has faced a significant amount of undue stress in her life and she struggles to deal with it appropriately. She doesn't have the skills to manage the amount of stress and the type of stress that she's under, so specifically children with adjustment disorders, they—they become very easily overwhelmed because they don't have the emotional regulation skills to deal with things, so, you know, typical well-functioning children, they have people in their life that can talk them through situations or teach them how to calm down, teach them how to take a deep breath, and she doesn't have that, and she hasn't experienced that, so she doesn't have the skills necessary to essentially manage her emotions and her body in a way that a child who doesn't have an adjustment disorder does."

¶ 10    The individual therapy sessions with K.R. occurred weekly at K.R.'s school and lasted 30 minutes. In total, Moon met with K.R. approximately 20 times. During the sessions, K.R. avoided discussing the trauma she experienced in her life. Specifically, K.R. avoided the subject

by getting up and walking away, by trying to change the subject, or by refusing to talk about it. With respect to the reported sexual abuse, Moon testified:

"We have attempted to talk about it at one time and when I asked her specifically about going to court and what that would mean for her, just about what she thought about it, she tried to, for several minutes, say that she didn't know what I was talking about, she didn't know why she needed to go to court, she didn't know what she would need to talk about, but when I asked her, do you really not know or do you really just don't want to talk about it? And she kind of gave me a look, and she said, I really—I can't talk about it, I don't want to. So, she knows, but emotionally, she's not able to allow herself to talk about it because it's too stressful for her."

Moon testified K.R.'s inability to talk about the reported sexual abuse was a manifestation of the adjustment disorder.

¶ 11 Moon provided an opinion as to the impact of requiring K.R. to testify in front of defendant inside the courtroom:

"Q. And how does that—the adjustment disorder—what would you expect her reaction to be if she's placed on the stand and made to testify in a courtroom in front of the [d]efendant?

A. I would expect her to become very overwhelmed. I would expect her to be very fidgety, I would expect that she would answer several questions with, I don't know, and I would expect her to be very, very overwhelmed.

- 4 -

Q. Do you—in your professional opinion, would she be so overwhelmed and so distressed by that situation that she wouldn't be able to communicate in the courtroom?

A. Yes. Oftentimes in my experience and in my education, children who have experienced trauma when they are made to do things such as this like testify, she—they often experience [post-traumatic stress disorder (P.T.S.D.)], P.T.S.D. type responses. She could have unwanted flashbacks, intrusive thoughts where she just thinks about it and she can't stop thinking about it. She could internalize that, so she would blame herself, think it's her fault, think that she's done something wrong and she—sometimes children who experience P.T.S.D. become aggressive and very manipulative in their environment, and I would expect her to respond in that way as well."

Moon also believed that allowing K.R. to testify outside the presence of defendant via a closed-circuit television would assist her in rendering her testimony:

"I believe that she would be more likely to respond, more likely to engage and answer questions because she won't have that—she'll still—I can predict that she will still be fearful, but I don't think that she would be as fearful and as emotionally distressed as she would be as if she were in the courtroom."

¶ 12        Moon was asked if her opinion was specific to K.R. or all children with K.R.'s diagnosis, to which Moon testified: "I believe it is specific to K.R. Not all kids with adjustment disorder present the same way, so when I'm speaking about adjustment, I'm speaking specifically

regarding her and the behaviors that she presents with." Moon acknowledged she had never rendered an opinion in a court proceeding.

¶ 13　　　　Based upon Moon's testimony, the State and K.R.'s guardian argued that the trial court should (1) find requiring K.R. to testify in front of defendant inside the courtroom would result in her suffering serious emotional distress such that she could not reasonably communicate and would suffer severe adverse effects and then (2) grant their motions and allow K.R. to testify via closed-circuit television. Defendant disagreed, arguing Moon's testimony was insufficient for the court to make the requisite finding to allow K.R. to testify via closed-circuit television. Defendant also expressed concern with the jury making "certain assumptions" about him if K.R. was allowed to testify via closed-circuit television.

¶ 14　　　　After taking the matter under advisement, the trial court entered an order granting the motions and allowing K.R. to testify via closed-circuit television. In the order, the court found, based upon its review of Moon's testimony, "K.R. would suffer serious emotional distress such that she cannot reasonably communicate in the presence of the [d]efendant in the courtroom." The court specifically highlighted Moon's testimony indicating she had been working with K.R. for approximately 20 therapy sessions and believed K.R. would be so overwhelmed and distressed if she were required to testify in front of defendant inside the courtroom that she would be unable to communicate and likely exhibit behaviors similar to those exhibited during the therapy sessions, such as getting up and walking away, changing the subject, and refusing to talk.

¶ 15　　　　　　　　　　　　　　C. Jury Trial

¶ 16　　　　In May 2018, the trial court, with Judge Michael L. Atterberry presiding, conducted a jury trial. K.R., who was 10 years old at the time of trial, testified via closed-circuit television that, when she was staying the night at Z.P.'s home, defendant came into Z.P.'s bedroom and

placed "his finger in his mouth" and then put it inside her underwear and "down to my vagina." Z.P., who was also 10 years old at the time of trial, testified that, when she was receiving a shoulder ride from defendant inside her bedroom on a night when K.R. was staying over, defendant reached around his neck and "touched my private and asked me if it felt good." The jury also heard both minors' accounts through recorded forensic interviews. After hearing the evidence presented, the jury found defendant guilty of predatory criminal sexual assault of a child and aggravated criminal sexual abuse.

¶ 17                                  D. Posttrial Proceedings

¶ 18            In June 2018, defendant filed a motion for a new trial. In the motion, defendant argued that (1) "[w]hile the jury was instructed that it should give the testimony of K.R. the same consideration had K.R. personally appeared in court, the use of [the procedure allowing K.R. to testify via closed-circuit television] is highly prejudicial to [d]efendant" and (2) "[t]he prejudice to [d]efendant resulting from the closed[-]circuit television testimony warrants a new trial."

¶ 19            In July 2018, the trial court, with Judge Michael Atterberry presiding, conducted a hearing on defendant's motion for a new trial. At that hearing, defendant argued:

> "[T]his motion pertains to the procedure that was used whereby [K.R.] was permitted, pursuant to statute, to testify not in the presence of the jury but outside the presence of the jury. And essentially, we are arguing that that procedure, while it did comply with statute, was prejudicial to [defendant][.]"

The court attempted to clarify defendant's argument, stating:

> "[J]ust to be clear so I understand, you're arguing not only all the reasons that you presented, I think it was Judge Wellborn, maybe,

who ruled on the original motion to have the testimony presented in this light. Are there any additional reasons based on the actual procedure used that you're asking that this posttrial motion be granted?"

Defendant responded in the negative. The State, in response, argued no error occurred as the statutory procedures were followed prior to and during trial. In part, the State asserted Judge Wellborn made an appropriate finding based upon the testimony from K.R.'s therapist. After considering the arguments presented and reviewing the written order entered by Judge Wellborn, the court denied defendant's motion. In part, the court found Judge Wellborn's order was appropriate from what it could discern. The matter then proceeded to sentencing, where the court sentenced defendant to consecutively imposed terms of 15 years in prison for predatory criminal sexual assault of a child and 7 years in prison for aggravated criminal sexual abuse.

¶ 20     This appeal followed.

¶ 21                                II. ANALYSIS

¶ 22     On appeal, defendant argues the trial court violated his right to confrontation when it allowed K.R. to testify via closed-circuit television because there was insufficient evidence that testifying in court would prevent her from reasonably communicating or cause her to suffer severe emotional distress. In support, defendant emphasizes K.R.'s therapist was neither a doctor nor a psychologist and had never testified as an expert, and K.R. never told her therapist about the reported sexual abuse she suffered. Defendant also asserts the opinion from K.R.'s therapist was speculative and generalized and proven incorrect based upon K.R.'s ability to testify and discuss the sexual abuse with the forensic interviewer.

¶ 23     As an initial matter, the State asserts defendant forfeited any argument concerning

the sufficiency of the evidence by failing to raise it in his posttrial motion. Defendant disagrees, contending his posttrial motion "obviously was intended to renew and preserve for appeal" his pretrial argument concerning the sufficiency of the evidence. Alternatively, defendant contends his forfeiture may be excused under the plain error doctrine. While the State's forfeiture argument is well taken, we elect to exercise our discretion to consider the merits of defendant's argument. See *People v. Curry*, 2018 IL App (1st) 152616, ¶ 36, 100 N.E.3d 482 ("[F]orfeiture is a limitation on the parties, not the court, and we may exercise our discretion to review an otherwise forfeited issue."). We do so here particularly because the State and the trial court addressed the issue during the hearing on defendant's posttrial motion.

¶ 24 Both the State and K.R.'s guardian filed pretrial motions to allow K.R. to testify via closed-circuit television pursuant to section 106B-5 of the Criminal Code (725 ILCS 5/106B-5(a)(2) (West 2016)). Section 106B-5 provides, in relevant part, as follows:

> "In a proceeding in the prosecution of an offense of *** predatory criminal sexual assault of a child *** or aggravated criminal sexual abuse, a court may order that the testimony of a victim who is a child under the age of 18 years *** be taken outside the courtroom and shown in the courtroom by means of a closed[-]circuit television if:
>
> ***
>
> (2) the judge determines that testimony by the child victim *** in the courtroom will result in the child *** suffering serious emotional distress such that the child *** cannot reasonably communicate or that the child *** will suffer severe emotional distress that is likely to cause the child *** to suffer severe adverse

effects." 725 ILCS 5/106B-5(a)(2) (West 2014).

¶ 25        During a hearing on the pretrial motions, the trial court heard testimony from K.R.'s therapist. K.R.'s therapist testified about her education, training, and experience working with minors who had experienced trauma. While defendant points out K.R.'s therapist was neither a doctor nor a psychologist and had never testified as an expert, defendant cites no authority requiring any such qualifications or experience to be able to render relevant testimony.

¶ 26        K.R.'s therapist also testified about her experience working specifically with K.R. She had conducted approximately 20 individual therapy sessions with K.R. During those sessions, K.R., a minor diagnosed with adjustment disorder, avoided discussing the trauma she experienced in her life, including the reported sexual abuse. K.R. specifically avoided the subject by getting up and walking away, by trying to change the subject, or by refusing to talk about the trauma. While defendant points out K.R. never discussed the reported sexual abuse with her therapist, that fact does not preclude K.R.'s therapist from being able to render relevant testimony.

¶ 27        K.R.'s therapist opined requiring K.R. to testify in front of defendant inside the courtroom would cause her to become so overwhelmed that she would not be able to communicate. Defendant asserts the opinion was speculative and generalized. We disagree. K.R.'s therapist made clear the opinion was based upon her experience with K.R. and specific to K.R. Defendant further asserts the opinion was proven incorrect based upon K.R.'s ability to testify and discuss the sexual abuse with the forensic interviewer. We disagree. The fact K.R. was able to discuss the sexual abuse via closed-circuit television and with the forensic interviewer does not subtract from the opinion that requiring K.R. to testify in front of defendant inside the courtroom would cause her to become so overwhelmed that she would not be able to communicate.

¶ 28        Contrary to defendant's argument, we find the testimony presented was more than

sufficient to support the trial court's finding that "K.R. would suffer serious emotional distress such that she cannot reasonably communicate in the presence of the [d]efendant in the courtroom." Accordingly, defendant's argument suggesting the trial court violated his right to confrontation when it allowed K.R. to testify via closed-circuit television is meritless.

¶ 29                                    III. CONCLUSION

¶ 30            We affirm the trial court's judgment.

¶ 31            Affirmed.

¶ 32            JUSTICE STEIGMANN, specially concurring:

¶ 33            Although I fully agree with my distinguished colleagues in the majority in this case, I write this special concurrence to reiterate the concerns expressed by this court in *People v. Pope*, 2020 IL App (4th) 180773, ¶¶ 42-46, 157 N.E.3d 1055. In *Pope*, this court acknowledged that the Illinois Supreme Court in *People v. Dean*, 175 Ill. 2d 244, 254, 677 N.E.2d 947, 952 (1997), concluded that section 106B-1 of the Criminal Code was constitutional. *Pope*, 2020 IL App (4th) 180773, ¶ 43. However, we noted that to reach that conclusion, the Illinois Supreme Court relied on *Maryland v. Craig*, 497 U.S. 836, 851 (1990), and we further noted that the later decision of the United States Supreme Court in *Crawford v. Washington*, 541 U.S. 36 (2004), renders continued reliance upon *Craig* problematic. *Pope*, 2020 IL App (4th) 180773, ¶¶ 44-45. As this court wrote in *Pope*, Professor Wayne LaFave has similarly questioned continued reliance on *Craig*, writing as follows:

> " 'Some language in *Crawford* that endorses categorical rules rather than balancing tests is at odds with the Court's opinion in *Craig*. Nevertheless[,] courts have continued to apply *Craig*, noting that the *Crawford* decision did not mention *Craig*, and that it addressed when confrontation is required, not what procedures constitute

- 11 -

confrontation.' " *Id.* ¶ 45 (quoting 6 Wayne R. LaFave, Criminal Procedure § 24.2(e) (4th ed. 2019)).

¶ 34　　　　　　Only the Illinois Supreme Court can change its holding regarding the constitutionality of section 106B-1 of the Criminal Code, and until the Illinois Supreme Court sees fit to do so, this court is required to follow *Dean*. Nonetheless, I am writing this special concurrence in the hope that the Illinois Supreme Court might reconsider its holding in *Dean*.

**No. 4-18-0505**

| | |
|---|---|
| **Cite as:** | *People v. Rajner*, 2021 IL App (4th) 180505 |
| **Decision Under Review:** | Appeal from the Circuit Court of Adams County, No. 17-CF-873; the Hon. Michael L. Atterberry, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Darrel F. Oman, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Gary L. Fahra, State's Attorney, of Quincy (Patrick Delfino, David J. Robinson, and Benjamin M. Sardinas, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |