NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 190633-U

NO. 4-19-0633

IN THE APPELLATE COURT

FILED
November 16, 2021
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| JOSE CASTILLO, | ) | No. 17CF187 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Knecht and Justice Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed the trial court's judgment and sentence, finding defendant was proven guilty of aggravated battery beyond a reasonable doubt and trial counsel did not provide ineffective assistance at sentencing.

¶ 2    In May 2019, defendant, Jose Castillo, an inmate at Pontiac Correctional Center (Pontiac), was found guilty of two counts of aggravated battery after a bench trial. He was sentenced to concurrent terms of 10 and 5 years. Count I alleged defendant struck an individual he knew to be a correctional officer with "an unknown liquid substance about the face and body" while the officer was engaged in the performance of his authorized duties (720 ILCS 5/12-3.05(d)(4)(i) (West 2018)). Normally a Class 2 felony (720 ILCS 5/12-3.05(h) (West 2018)), because of his prior convictions, defendant was subject to a mandatory Class X sentence of 6 to 30 years with a 3-year term of mandatory supervised release (MSR) (730 ILCS

5/5-4.5-95(b) (West 2018)). Count II alleged defendant made physical contact of an insulting or provoking nature with another inmate by striking him with "an unknown liquid substance," knowing Pontiac to be public property (720 ILCS 5/12-3.05(c) (West 2018)). This was a Class 3 felony, punishable by two to five years in the penitentiary along with one year of MSR (720 ILCS 5/12-3.05(h) (West 2018); 730 ILCS 5/5-4.5-40(a), (l) (West 2018)). Because the offenses were committed while defendant was in the custody of the Illinois Department of Corrections (DOC), his sentences were mandatorily consecutive to the sentence he was already serving (730 ILCS 5/5-8-4(d)(6) (West 2018)). Defendant filed a motion to reconsider the sentence, which was denied, and he pursues this appeal.

¶ 3                                    I. BACKGROUND

¶ 4            In June 2017, the State indicted defendant on two counts of aggravated battery based on an incident in February 2016 at Pontiac. Defendant had thrown four milk cartons containing what he testified to be "feces, urine, and my semen" in the face of John Eilers— another inmate with whom he had been having continuing problems. When defendant threw the contents of the milk cartons at inmate Eilers, he also struck Lieutenant John Thorpe, a correctional officer who was escorting Eilers at the time. According to defendant, Eilers had been threatening and harassing him for days and threatened harm to defendant's family upon his release. Although defendant denied Thorpe was immediately present or an intended target, after a bench trial, the trial court found defendant guilty of both counts and sentenced him to 10 years on count I and a concurrent sentence of 5 years on count II. By statute, both sentences were mandatorily consecutive to the sentences defendant was already serving. Defendant's motion to reconsider his sentence was denied and he filed a timely notice of appeal, raising two issues.

¶ 5                                    II. ANALYSIS

¶ 6                                    A. Issues for Review

¶ 7          On appeal, defendant contends, first, the State failed to prove him guilty of aggravated battery as alleged in count II, claiming a cell block in a maximum-security prison inaccessible to the public does not constitute "public property" for purposes of the aggravated battery statute, and the State failed to prove ownership of Pontiac. Next, defendant contends he was denied the effective assistance of counsel during his sentencing because his attorney failed to present mitigating evidence and failed to devote proper "time and attention" to his case.

¶ 8          We begin by noting defendant's claims of error relate only to the conviction and sentence for count II, aggravated battery of inmate Eilers in violation of section 12-3.05(c) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/12-3.05(c) (West 2018)), the only count involving "public property." He neither claims error in nor argues the insufficiency of evidence for his conviction on count I, aggravated battery of Lieutenant John Thorpe. Defendant's conviction on count I, the Class 2 felony for which defendant faced mandatory Class X sentencing, stands unchallenged and we need not discuss it further.

¶ 9          We next observe these issues were not raised by defendant by way of objection, motion, or posttrial motion before the trial court—a fact that is not mentioned by either defendant or the State. "To preserve an alleged error for appeal, a defendant must object at trial and file a written posttrial motion." *People v. Bates*, 2018 IL App (4th) 160255, ¶ 69, 112 N.E.3d 657 (citing *People v. Colyar*, 2013 IL 111835, ¶ 27, 996 N.E.2d 575). Failure to do so results in forfeiture. *Bates*, 2018 IL App (4th) 160255, ¶ 69 (citing *People v. Sebby*, 2017 IL 119445, ¶ 48, 89 N.E.3d 675). Defendant does not ask us to forgive his procedural forfeiture and consider the issues by way of the plain-error doctrine. Instead, he ignores his procedural forfeiture entirely and proceeds to argue them. Even more unfortunately, the State does likewise. Forfeiture,

however, is a limitation on the parties, not the court, and we may exercise our discretion to review otherwise forfeited issues. *People v. Rajner*, 2021 IL App (4th) 180505, ¶ 23. We elect to address the merits of defendant's claims.

¶ 10                                B. Public Property

¶ 11           As to count II, defendant claims the legal insufficiency of the evidence against him for the offense of aggravated battery on public property, as charged in the indictment. Specifically, defendant contends a cell block in a maximum-security prison is not "public property" for the purposes of the aggravated battery statute and, alternatively, that the State failed to present sufficient evidence of "ownership" of Pontiac. Although defendant couched his issue in terms of the "sufficiency of the evidence," asserting the State failed to prove him guilty beyond a reasonable doubt, we must first address the question of statutory construction, an issue of law which is subject to *de novo* review. *People v. Fort*, 2017 IL 118966, ¶ 20, 88 N.E.3d 718. Based upon our statutory interpretation, we then must decide whether the evidence was sufficient to prove defendant guilty. The proper standard of review for a sufficiency-of-the-evidence claim is whether the judgment is against the manifest weight of the evidence. *People v. Moore*, 301 Ill. App. 3d 759, 764, 704 N.E.2d 442, 445 (1998). The trial court's decision is given great deference, and we will reverse only where the evidence is so unsatisfactory, unreasonable, or improbable that it raises a reasonable doubt of the defendant's guilt. *People v. Evans*, 209 Ill. 2d 194, 209, 808 N.E.2d 939, 947 (2004).

¶ 12           Contrary to defendant's first claim of error, his "public property" issue does not require us to determine whether a particular cell block within Pontiac is "public property," since he was not so charged. Count II of the indictment reads, in relevant part, as follows:

"knowingly made physical contact of an insulting or provoking nature with Inmate John Eilers, in that the defendant struck John Eilers with an unknown liquid substance about the face and body, knowing Pontiac *** to be public property."

Defendant attempts to narrow the issue beyond what was necessary for conviction. All that was required of the State, and by the statute under which defendant was charged, was that at the time of the offense, defendant knew it was occurring on public property—namely Pontiac—not at a specific location on a particular cell block within the facility.

¶ 13 Under section 12-3.05(c) of the Criminal Code (720 ILCS 5/12-3.05(c) (West 2018)), the offense of aggravated battery can be aggravated based on the location and can be "public property," which need not necessarily be accessible to the public to be defined as such. See *People v. Messenger*, 2015 IL App (3d) 130581, ¶ 22, 40 N.E.3d 417. In fact, citing our holding in *People v. Hill*, 409 Ill. App. 3d 451, 454, 949 N.E.2d 1180, 1183 (2011), the *Messenger* court found the plain and ordinary meaning of "public property" was simply property owned by the government. *Messenger*, 2015 IL App (3d) 130581, ¶ 22. Defendant relies heavily on language found in *People v. Ojeda*, 397 Ill. App. 3d 285, 921 N.E.2d 490 (2009), and the same line of cases he cites here defining "public property," for purposes of the aggravated battery statute, as property which is accessible to the public. We expressly rejected that analysis in *Hill* and continue to do so, despite defendant's invitation to reconsider our holding. See *Hill*, 409 Ill. App. 3d at 455 ("We do not agree with the Second District's restrictive view of the definition of 'public property.' "). In *Hill*, we noted the court in *Ojeda* substituted "public building" for "public property" under the aggravated battery statute and held:

"[n]othing indicates the General Assembly meant for the plain and ordinary meaning of "public property" to be anything other than government-owned property. Moreover, the county jail is property used for the public purpose of housing inmates." *Hill*, 409 Ill. App. 3d at 455.

¶ 14 Defendant seeks solace in *People v. Wells*, 2019 IL App (1st) 163247, ¶ 41, 136 N.E.3d 1055, by noting its reference to the public school at issue being " 'open to the public,' even if access was limited." Defendant fails to mention this language came after the court concluded, based on the rationale of *Hill* and *Messenger*, "we find it was sufficient to establish that Hubbard High School was a public school, and as a government-owned entity, it was therefore 'public property' within the meaning [of] the aggravated battery statute." *Wells*, 2019 IL App (1st) 163247, ¶ 40. In fact, the *Wells* court went on to say:

"In the same way that the jail in *Hill* was 'public property' that was government owned and used 'for the public purpose of housing inmates,' the high school here was a public school, which was used for the public purpose of educating children." *Wells*, 2019 IL App (1st) 163247, ¶ 40.

¶ 15 In *Hill*, the defendant was charged with aggravated battery for committing a battery inside the Macon County jail. *Hill*, 409 Ill. App. 3d at 452. Our analysis focused on the fact the battery occurred in the jail, not that it occurred in a particular "pod" within the jail. *Hill*, 409 Ill. App. 3d at 454. We mentioned the "pod" merely in passing to note it was within property owned by the government and therefore public property. *Hill*, 409 Ill. App. 3d at 455. Similarly, in *Messenger*, the defendant was charged with aggravated battery while incarcerated in the

Whiteside County jail. *Messenger*, 2015 IL App (3d) 130581, ¶ 4. There, unlike in *Hill*, where the defendant contended the particular "pod" in which the battery occurred was not "public property" (see *Hill*, 409 Ill. App. 3d at 453), the defendant in *Messenger* contended the entire jail was not "public property" because it was inaccessible to the public. *Messenger*, 2015 IL App (3d) 130581, ¶¶ 6, 10. Once again disavowing the line of cases upon which defendant relies here, the *Messenger* court concluded the county jail was public property, making no distinction for where the battery occurred therein. *Messenger*, 2015 IL App (3d) 130581, ¶ 23. Just as in *Hill* and *Messenger*, the battery here occurred within the facility, which is public property, regardless of the specific location.

¶ 16                                    C. Ownership

¶ 17            This brings us to defendant's next claim of error—that the State "provided no evidence of the ownership of Pontiac." This too was never raised before the trial court at trial or by way of a posttrial motion. While it is true the record is devoid of any effort to seek judicial notice that Pontiac was owned by the State—or was public property—throughout the bench trial, witnesses identified the location of the offenses as Pontiac. Lieutenant Thorpe testified he was a correctional officer and related the incidents of February 9, 2016, taking place at Pontiac. Jeremy Olsen identified himself as an investigator with DOC who was involved in investigating the incident at Pontiac. The parties stipulated to playing a video from DOC taken at Pontiac. Defendant testified he was currently serving a sentence in DOC and discussed being in a penitentiary. The State asks us to take judicial notice of the fact "Pontiac *** is a public correctional center and therefore public property." " 'A court may take judicial notice of matters generally known to the court and not subject to reasonable dispute.' " *Hill*, 409 Ill. App. 3d at 456 (quoting *In re A.B.*, 308 Ill. App. 3d 227, 237, 719 N.E.2d 348, 356 (1999)). As we further

noted in *Hill*, we "may take judicial notice of a fact even if it constitutes an element of the offense." *Hill*, 409 Ill. App. 3d at 456 (citing *People v. White*, 311 Ill. App. 3d 374, 380, 724 N.E.2d 572, 577 (2000)). Although defendant now complains of the absence of judicial notice, he did not do so before the trial court, and he does not even now seek to claim the failure constitutes ineffective assistance of counsel. This court, however, may take judicial notice of readily verifiable facts if doing so will aid in the efficient disposition of the case, even if judicial notice was not sought in the trial court. *Kramer v. Ruiz*, 2021 IL App (5th) 200026, ¶ 32 n.3 (citing *Aurora Loan Services, LLC v. Kmiecik*, 2013 IL App (1st) 121700, ¶ 37, 992 N.E.2d 125). Further, we may take judicial notice of information on a public website even though the information was not in the record on appeal. *People v. Crawford*, 2013 IL App (1st) 100310, ¶ 118 n.9, 2 N.E.3d 1143; *People v. Clark*, 406 Ill. App. 3d 622, 633-34, 940 N.E.2d 755, 767 (2010). The efficacy of such a practice was acknowledged by our supreme court in *People v. Davis*, 65 Ill. 2d 157, 357 N.E.2d 792 (1976). "In our judgment, the extension of the doctrine of judicial notice to include facts which, while not generally known, are readily verifiable from sources of indisputable accuracy is an important aid in the efficient disposition of litigation, and its use, where appropriate, is to be commended." *Davis*, 65 Ill. 2d at 165.

¶ 18      Here, a clear reading of the transcript reveals no one contested the fact Pontiac was public property owned by the State. Defendant never sought to claim otherwise. His position throughout was that he had not thrown the liquid on the correctional officer, had no intention to do so, and that the officer was not immediately present when he threw it at the other inmate. The parties were sufficiently unconcerned about Pontiac's status as public property that neither the State nor defendant argued that issue in their closing arguments. Ascertaining the State's ownership of Pontiac as a correctional facility of DOC is a simple matter, and one we can do by

way of judicial notice. Since the evidence conclusively showed the offense occurred at Pontiac and we can judicially notice the State ownership of Pontiac, the State presented sufficient evidence to satisfy the public-property element in count II. The trial court's judgment does not stand against the manifest weight of the evidence. *Moore*, 301 Ill. App. 3d at 764.

¶ 19                                 D. Ineffective Assistance

¶ 20            Defendant's second claim of error asserts ineffective assistance of counsel. When presented with such a claim, we apply the well-established, two-part *Strickland* test, wherein the defendant must prove (1) counsel rendered deficient performance and (2) counsel's deficient performance prejudiced the defendant. *People v. Pope*, 2020 IL App (4th) 180773, ¶ 61, 157 N.E.3d 1055; see also *People v. Young*, 341 Ill. App. 3d 379, 383, 792 N.E.2d 468, 472 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984)); *People v. Peck*, 2017 IL App (4th) 160410, ¶ 26, 79 N.E.3d 232. *Strickland* imposes a steep burden for defendants to surmount, requiring defendants to demonstrate both prongs while simultaneously requiring reviewing courts to pay great deference to trial counsel's decisions, meaning we must refrain from hindsight or second-guessing. See *People v. McGath*, 2017 IL App (4th) 150608, ¶ 38, 83 N.E.3d 671 (citing *Strickland*, 466 U.S. at 689). Our review of trial counsel's decisions regarding trial strategy should be "highly deferential," lest we engage in second-guessing counsel's decisions "through the lens of hindsight." *People v. Perry*, 224 Ill. 2d 312, 344, 864 N.E.2d 196, 216 (2007). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. [Citation.]" (Internal quotation marks omitted.) *People v. Manning*, 241 Ill. 2d 319, 334, 948 N.E.2d 542, 551 (2011) (quoting *Strickland*, 466 U.S. at 689). When asked to review an

ineffective-assistance-of-counsel claim not previously raised in the trial court, our review is *de novo*. *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 85, 126 N.E.3d 703.

¶ 21        Defendant claims he received ineffective assistance of counsel during sentencing when counsel "did not present additional evidence in mitigation and demonstrated that he did not properly devote time and attention to [defendant's] case." This assertion of error ignores the fact that the mitigation defendant claimed to be absent was either present in the presentence investigation report, admitted as evidence at sentencing, or defendant's own testimony—which the trial court expressly accepted for purposes of mitigation at sentencing. At the conclusion of the bench trial, after finding defendant guilty and continuing the matter for sentencing, the following dialogue occurred:

> "THE COURT: I did take notes Mr. Ripley [(defense
>
> counsel)], of [defendant's] testimony; and so if you wish for me to
>
> take notice of that at the sentencing hearing in mitigation, I think
>
> that would be fine.
>
> MR. RIPLEY: Thank you.
>
> THE COURT: Because I do understand that was a majority
>
> of [defendant's] testimony.
>
> MR. RIPLEY: Yes."

¶ 22        At sentencing, defendant's counsel, noting the nonviolent nature of the offense, pointed out that defendant's record, although lengthy, was filled with low-level felonies indicative of someone with substance abuse issues and technical registration violations of a 20-year-old sex offense conviction. Counsel expressly noted defendant's apparent lack of disciplinary record while incarcerated. He also commented on the trial court's prior acceptance

of defendant's trial testimony for mitigation and said he had no intention of repeating it. Defendant's claim counsel "neglected to present mitigation in support of [defendant] during sentencing" is disingenuous at best.

¶ 23    Although counsel did not repeat defendant's bench trial testimony at the sentencing hearing, the trial court and counsel had already agreed defendant's testimony, which was to a substantial degree more mitigation than fact, would be considered by the court at sentencing for purposes of mitigation. Defendant's statement in allocution contained much of the same information. The trial court imposed a 10-year sentence—substantially less than the 20 years requested by the State, and only 4 years above the minimum sentence possible. See 730 ILCS 5/5-4.5-25(a) (West 2018).

¶ 24    "To show ineffective assistance of counsel, a defendant must demonstrate that 'his attorney's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.' " *People v. Simpson*, 2015 IL 116512, ¶ 35, 25 N.E.3d 601 (quoting *People v. Patterson*, 192 Ill. 2d 93, 107, 735 N.E.2d 616, 626 (2000)). It is axiomatic that counsel's choice of trial strategy is " 'virtually unchallengeable' and will generally not support an ineffective assistance of counsel claim." *People v. Walton*, 378 Ill. App. 3d 580, 589, 880 N.E.2d 993, 1000 (2007) (quoting *People v. Palmer*, 162 Ill. 2d 465, 476, 643 N.E.2d 797, 802 (1994)). As an initial matter, we find no fault in counsel's strategic choice to avoid repeating evidence received from defendant at trial. The trial court had already indicated its intention to consider his testimony as mitigation, and, having dealt with defendant throughout the case, counsel was cognizant of the likelihood they were going to hear it all again in defendant's allocution—a fact borne out by the record.

¶ 25    The failure to offer evidence in mitigation of a sentence does not, in and of itself, demonstrate incompetence. *People v. Holman*, 164 Ill. 2d 356, 370, 647 N.E.2d 960, 967 (1995). Here, however, the record refutes defendant's claims and reveals substantial mitigation was before the trial court, either from defendant's testimony at trial or his presentence investigation report. The latter included a lengthy handwritten response outlining defendant's childhood history of special education, harassment by other children in school, abuse, substance abuse history, and family history. Each of the general categories of mitigating evidence defendant claims to have been omitted from his sentencing hearing was present. Much of it was heard by the court during defendant's trial and heard again during allocution. When mitigating evidence is before the court, we presume the court considered it in the absence of some indication to the contrary, other than the sentence itself. *People v. Jones-Beard*, 2019 IL App (1st) 162005, ¶ 21, 139 N.E.3d 1027; see also *People v. Johnson*, 2020 IL App (1st) 162332, ¶ 91, 148 N.E.3d 126 ("In the absence of evidence to the contrary, we presume that the sentencing court considered all mitigating evidence presented."). The trial court, despite defendant's lengthy criminal history, imposed a sentence of only 4 years over the minimum possible, and only half of the 20 years requested by the State. In this instance, defendant's sentence is, perhaps, the best evidence of the court's consideration of evidence in mitigation. Defendant fails to show how counsel was ineffective in this regard and further fails to show how he was prejudiced thereby.

¶ 26    Lastly, defendant claims counsel failed to devote adequate time to his motion for reconsideration of his sentence. He highlights (1) an obvious typographical error probably caused by "cutting and pasting" documents, (2) counsel's misstatement regarding the minimum sentence, and (3) argument he says was unsupported by affidavit. What defendant calls argument unsupported by affidavit is information the trial court heard and read from his trial testimony and

the presentence report. The attorney he contends was ill-prepared for the motion hearing was the same counsel defendant had throughout the trial and sentencing. At sentencing, he properly acknowledged the six-year minimum sentence and asked the court to impose it. His simple misstatement of the minimum during the hearing on the motion for reconsideration is pounced upon as a basis for invalidating his conviction. "To establish prejudice, a defendant must show that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different." *Sturgeon*, 2019 IL App (4th) 170035, ¶ 84. Considering defendant's 14 prior felony convictions and the fact he received only 4 years over the minimum on a Class X 6-to-30-year possible sentence, we see no prejudice and find no evidence in this record to support defendant's argument.

¶ 27                                   III.  CONCLUSION

¶ 28            For all the reasons set forth above, we find the evidence at trial was sufficient to prove defendant guilty of count II, and he did not receive ineffective assistance from his trial counsel. We therefore affirm the judgment and sentence of the trial court.

¶ 29            Affirmed.