**2022 IL 127894**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127894)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
JOSE CASTILLO, Appellant.

*Opinion filed November 28, 2022.*

JUSTICE MICHAEL J. BURKE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Anne M. Burke, Neville, Overstreet, and Carter concurred in the judgment and opinion.

Justice Holder White took no part in the decision.

**OPINION**

¶ 1 Defendant, Jose Castillo, was convicted of two counts of aggravated battery (720 ILCS 5/12-3.05(c), (d)(4)(i) (West 2018)), following a bench trial in the circuit court of Livingston County. On appeal, defendant challenged his conviction on the

basis that, *inter alia*, the State failed to prove him guilty of aggravated battery because (1) a cellblock in a maximum-security prison that is inaccessible to the public is not "public property" for purposes of the aggravated battery statute and (2) the State failed to prove ownership of Pontiac Correctional Center, the public property at issue.

¶ 2 The Appellate Court, Fourth District, affirmed defendant's conviction and sentence. 2021 IL App (4th) 190633-U. For the following reasons, we affirm the appellate court's judgment.

¶ 3 BACKGROUND

¶ 4 The incident giving rise to the aggravated battery charges against defendant, an inmate at Pontiac Correctional Center (Pontiac), occurred on February 9, 2016. In count I, the State charged defendant with aggravated battery in that, in committing a battery, defendant

"knowingly made physical contact of an insulting or provoking nature with Correctional Lieutenant John Thorpe [*sic*], in that the defendant struck John Thorpe with an unknown liquid substance about the face and body, knowing John Thorpe to be a correctional institutional employee of the State of Illinois Department of Corrections, who was engaged in the performance of his authorized duties,"

in violation of section 12-3.05(d)(4)(i) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/12-3.05(d)(4)(i) (West 2018)).

¶ 5 Count II charged defendant with aggravated battery in that defendant, in committing a battery, "knowingly made physical contact of an insulting or provoking nature with Inmate John Eilers, in that defendant struck John Eilers with an unknown liquid substance about the face and body, knowing Pontiac Correctional Center to be public property," in violation of section 12-3.05(c) of the Criminal Code (*id.* § 12-3.05(c)). Only count II is at issue in this appeal.

¶ 6 At defendant's bench trial, correctional officer John Thorp testified that he was employed at Pontiac. On February 9, 2016, Thorp was escorting inmate John Eilers from the north cell house of Pontiac to the east cell house. Eilers, in restraints,

walked approximately 8 to 12 inches in front of Thorp. As Eilers and Thorp walked past defendant's cell, defendant threw a liquid substance that smelled of feces, striking both Eilers and Thorp.

¶ 7        Jeremy Olson testified on behalf of the State that he was employed by the Department of Corrections as an investigator. Olson's role was to investigate possible infractions or incidents at Pontiac. Olson was assigned to investigate the allegations against defendant. Olson interviewed defendant in Olson's office at Pontiac. In his statement, defendant told Olson that he had thrown the feces at Eilers because Eilers had threatened to kill defendant's family and to beat up defendant. Defendant also told Olson that he did not think Thorp was anywhere near Eilers when he threw the substance.

¶ 8        Defendant testified in his own defense. Defendant stated that he was currently imprisoned in the Department of Corrections. Regarding the incident at issue, defendant testified that Eilers had threatened to kill defendant's family and to rape defendant's mother when Eilers was released from prison. In response to those threats, defendant threw four milk cartons containing feces, urine, and semen at Eilers, hitting Eilers in his face and mouth. Defendant denied that Thorp was escorting Eilers when Eilers walked by defendant's cell. Defendant testified that Thorp was not in the area when he threw the substance at Eilers and denied that any of the substance hit Thorp.

¶ 9        Following closing argument, the trial court found defendant guilty on both counts of aggravated battery and sentenced defendant to a term of 10 years on count I and 5 years on count II, to run concurrently with one another and consecutively to the sentences for which defendant was imprisoned. The trial court later denied defendant's motion to reconsider his sentence.

¶ 10        Defendant appealed, arguing that the State failed to prove him guilty of count II because a cellblock in a maximum-security prison does not constitute "public property" within the meaning of the aggravated battery statute. In the alternative, defendant argued that the State failed to prove ownership of Pontiac.[1]

---

[1]Defendant also raised a claim of ineffective assistance of counsel in the appellate court. The appellate court denied that claim, and defendant does not raise the issue in this court.

¶ 11 In affirming defendant's conviction, the appellate court first noted that defendant had not raised either issue in the trial court by way of objection, motion, or posttrial motion. 2021 IL App (4th) 190633-U, ¶ 9. Defendant did not ask the appellate court to forgive the procedural forfeiture or to consider the issues under the plain error doctrine, and he instead simply argued the issues. *Id.* The State likewise failed to raise the procedural forfeiture issue. *Id.* Given its discretion to review otherwise forfeited issues, the appellate court chose to consider the merits of defendant's claims. *Id.*

¶ 12 Turning to those claims, the appellate court then noted that, contrary to defendant's framing of his first claim of error, defendant's public property issue did not require the court to decide whether a particular cellblock within Pontiac was "public property." *Id.* ¶ 12. The appellate court explained that the charges against defendant were not drawn so narrowly. *Id.* Count II of the indictment charged that defendant committed a battery, "knowing Pontiac Correctional Center to be public property." Accordingly, the State need only prove that, at the time of the offense, defendant knew that it was occurring on public property, namely Pontiac, rather than on a particular cellblock within the facility. *Id.*

¶ 13 The appellate court then noted a conflict among the districts of the appellate court concerning whether "public property" meant that property must be accessible to the public to be defined as such. *Id.* ¶ 13. The Fourth District in *People v. Hill*, 409 Ill. App. 3d 451, 454 (2011), concluded that there was nothing to indicate that the General Assembly intended the plain and ordinary meaning of "public property" to be anything other than government-owned property. Accordingly, *Hill* held that the defendant could be found guilty of aggravated battery based on a battery occurring within a pod in the county jail. *Id.* at 455.

¶ 14 The Appellate Court, Third District, likewise found that the plain and ordinary meaning of "public property" was simply property owned by the government. *People v. Messenger*, 2015 IL App (3d) 130581, ¶ 22. The *Messenger* court thus held that the defendant was properly convicted of aggravated battery for a battery that occurred inside the county jail.

¶ 15 The Appellate Court, Second District, however, found that "public property" for purposes of the aggravated battery statute is property that is both owned by the government and is accessible to the public. *People v. Ojeda*, 397 Ill. App. 3d 285

(2009). At issue in *Ojeda* was whether a high school was public property for purposes of the aggravated battery statute. *Id.* at 286. *Ojeda* concluded that "public property" must be both accessible to the public, even if that access was limited, and funded by taxpayers. *Id.* at 287.

¶ 16 In the appellate court, defendant relied "heavily" on *Ojeda* in support of his argument that Pontiac was not "public property" for purposes of the aggravated battery statute because Pontiac was not accessible to the public. 2021 IL App (4th) 190633-U, ¶ 13. The appellate court noted that it had rejected the *Ojeda* analysis in *Hill* and declined defendant's invitation to reconsider that holding. *Id.* The appellate court stated that, as in *Hill* and *Messenger*, the battery in this case occurred within Pontiac, which is public property, regardless of the specific location of the battery. *Id.* ¶ 15.

¶ 17 The appellate court next addressed defendant's claim that the State offered no evidence concerning the ownership of Pontiac. *Id.* ¶ 17. At trial, neither party contested the fact that Pontiac was public property owned by the State, and neither party argued that issue in their closing arguments. *Id.* ¶ 18. The trial witnesses testified that the offenses took place at Pontiac. *Id.* ¶ 17. The appellate court held that it could take judicial notice that Pontiac was owned by the State. *Id.* ¶ 18. The appellate court explained that it could take judicial notice of matters generally known to the court and not subject to reasonable dispute, even if the judicial notice is of a fact that constitutes an element of the offense. *Id.* ¶ 17. Given the evidence that the offense occurred at Pontiac, along with the judicial notice that Pontiac was owned by the State, the appellate court held that the evidence was sufficient to prove defendant guilty of the aggravated battery charged in count II. *Id.* ¶ 18. The appellate court therefore affirmed defendant's conviction and sentence. *Id.* ¶ 28.

¶ 18 Defendant filed a petition for leave to appeal, which this court allowed pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2021).

¶ 19                                                    ANALYSIS

¶ 20 Defendant raises the same issues in this court that he raised in the appellate court. First, defendant argues that property that is inaccessible to the public, such as the cellblock in this case, should not be considered public property under section

12-3.05(c) of the Criminal Code. Second, assuming this court agrees with the appellate court that public property is simply any property owned by the government, this court nonetheless should vacate defendant's conviction for aggravated battery because the State failed to prove the ownership of Pontiac, an element of the offense of aggravated battery.

¶ 21     At the outset we note that defendant continues to narrowly frame the issue as whether a prison cellblock should be considered public property under section 12-3.05(c). As the appellate court observed, however, the indictment against defendant charged that he committed a battery against Eilers "knowing Pontiac Correctional Center to be public property, in violation of Section 12-3.05(c)." The issue before this court, then, is whether Pontiac is public property under the aggravated battery statute.

¶ 22     Having clarified the issue before us, we address the merits of that issue, looking first to the language of the aggravated battery statute itself. Section 12-3.05(c) of the Criminal Code provides:

"A person commits aggravated battery when, in committing a battery, other than by the discharge of a firearm, he or she is or the person battered is on or about a public way, public property, a public place of accommodation or amusement, a sports venue, or a domestic violence shelter." 720 ILCS 5/12-3.05(c) (West 2018).

¶ 23     Defendant argues that "public property" in the statute is limited to property that is both owned by the government and is accessible to the general public. The State responds that "public property" is simply government-owned property, with no other qualifiers.

¶ 24     Because this issue presents an issue of statutory construction, our review is *de novo*. *People v. Kastman*, 2022 IL 127681, ¶ 29. A court's fundamental objective in addressing issues of statutory construction is to ascertain and to give effect to the legislature's intent. *People v. Newton*, 2018 IL 122958, ¶ 14. The most reliable indicator of the legislature's intent is the language of the statute, given its plain and ordinary meaning. *Id.* Words and phrases in the statute are construed in light of other relevant statutory provisions and not in isolation. *Id.* Where the language of the statute is plain and unambiguous, a court will apply it as written,

without resort to extrinsic aids to statutory construction. *People v. Dabbs*, 239 Ill. 2d 277, 287 (2010). In determining the plain, ordinary, and popularly understood meaning of a statutory term, it is entirely appropriate to look to the dictionary for a definition of the term. *Id.* at 288.

¶ 25    Defendant notes that section 12-3.05(c) does not contain a definition for "public property." Because the term is not defined, defendant argues that this court should look to the popularly understood meaning of the term "public property" to determine its meaning.

¶ 26    In support of his argument, defendant first looks to dictionary definitions of the word "public." Defendant cites the Black's Law Dictionary definition of "public" as "[o]pen or available for all to use, share, or enjoy." Black's Law Dictionary 1483 (11th ed. 2019). Defendant also cites the Black's Law Dictionary definition of "public building" as "[a] building that is accessible to the public; esp., one owned by the government." *Id.* at 1484. Based upon the preceding definitions, defendant contends that the plain meaning of "public property" is property that is both owned by the government and accessible to the general public.

¶ 27    The State responds that the dictionary definitions relied upon by defendant are inapplicable because defendant relies upon definitions for "public" and "public building," when the statutory term at issue in this case is "public property." The State asserts that, under virtually all dictionary definitions, the meaning of "public property" is something owned by the city, town, or state. For example, Black's Law Dictionary defines "public property" as "[s]tate- or community-owned property not restricted to any one individual's use or possession." *Id.* at 1472. The State cites other dictionary definitions of "public property," which similarly define the term as property owned by a "city, town, or state" (Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/public%20property (last visited Nov. 9, 2022) [https://perma.cc/R9JE-98BG]); "owned by the government or *** the public as such in a governmental capacity" (Ballantine's Law Dictionary (3d ed. 2010)); and "all property owned by a government" (Bouvier Law Dictionary (Desk ed. 2012)). None of the dictionary definitions of "public property" add that government-owned property must also be publicly accessible. The State argues that the plain and unambiguous definition of public property, then, is simply government-owned property.

¶ 28 We agree with the State. The statute uses the term "public property," not the word "public" alone or the term "public building." The plain, ordinary, and popularly understood meaning of "public property" is property owned by the government, with no additional qualifiers.

¶ 29 In his reply brief, however, defendant asserts that the definition of "public property" in Black's Law Dictionary has been defined differently throughout several editions. Defendant argues that this court must look to the definition in the edition published closest to the statute's enactment, which in this case would be the revised fourth edition of Black's Law Dictionary, published in 1968. That edition defined "public property" as follows:

> "This term is commonly used as a designation of those things which are *publici juris*, (*q.v.*,) and therefore considered as being owned by 'the public,' the entire state or community, and not restricted to the dominion of a private person. It may also apply to any subject of property owned by a state, nation, or municipal corporation as such." Black's Law Dictionary 1383 (4th rev. ed. 1968).

¶ 30 Defendant reads the 1968 definition as setting forth dual definitions of "public property." According to defendant, one definition refers to the character of the property, who has access to the property, and whether private individuals have greater dominion over the property than the general public. The second definition reflects the ownership of the property. Defendant argues that, given the dual definitions of "public property" in the 1968 edition of Black's Law Dictionary, this court should consider both the ownership of the property and the public's access to the property, in determining whether property is "public property" under the statute. We disagree.

¶ 31 Both portions of the definition concern ownership of the property. To the extent defendant may be reading "dominion" as encompassing access to the property, we note that the same edition of Black's Law Dictionary defines "dominion" as "[o]wnership, or right to property or perfect or complete property or ownership." *Id.* at 573. Whether this court looks to the 2019 edition or the 1968 edition of Black's Law Dictionary, we find that the plain, ordinary, and popularly understood meaning of "public property" is simply property owned by the government, without regard to the public's access to the property.

¶ 32       With the preceding definition of "public property" in mind, we address the split in our appellate court districts concerning the plain, ordinary, and commonly understood meaning of "public property" in the aggravated battery statute. The courts in *Hill* and *Messenger* held that the plain and ordinary meaning of "public property" in the aggravated battery statute is simply property owned by the government. The *Ojeda* court, which defendant relied upon in support of his argument, held that "public property" was property that is both funded by taxpayers and is accessible to the public, although the court held that the public access need not be unrestricted and unlimited. The *Ojeda* court's analysis was flawed, however, because the court looked to the definitions of "public building" and "public" to define public property, rather than simply looking to the definition of "public property" itself. See 397 Ill. App. 3d at 287.

¶ 33       The decisions of the *Hill* court and the *Messenger* court are consistent with our analysis in this case. The *Ojeda* decision, however, cannot stand following our decision. For that reason, we hereby overrule *Ojeda*.

¶ 34       Given our finding that the "public property" language in the aggravated battery statute is plain and unambiguous, this court need not address defendant's additional arguments concerning the legislative history of the statute. It is only when the meaning of a statute is ambiguous that a court looks beyond the statutory language and considers the purpose of the law, the evils it was intended to remedy, and the legislative history of the statute. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 217 (2008). We thus affirm the appellate court's finding that the battery at issue in this case occurred on public property within the meaning of the aggravated battery statute.

¶ 35       Having affirmed the appellate court's finding that Pontiac was public property for purposes of the aggravated battery statute, we turn to defendant's second issue on appeal: that the appellate court erred in taking judicial notice of the ownership of Pontiac when the State presented no evidence concerning that element of the offense. Defendant concedes that the standard of review concerning an evidentiary matter, including judicial notice, is abuse of discretion. *In re S.M.*, 2015 IL App (3d) 140687, ¶ 13. Defendant argues, however, that the issue in this case presents a question of law concerning whether the appellate court violated defendant's due process rights when it took judicial notice of a fact that was not before the trial

court. Defendant does not otherwise explain or cite authority in support of this argument. Consequently, we see no reason to depart from the abuse of discretion standard of review.

¶ 36    With regard to the merits of his claim, defendant contends that the appellate court effectively absolved the State of its burden of proof in taking judicial notice concerning the ownership of Pontiac. Defendant argues that the State should be held to its burden of proof and should be required to prove beyond a reasonable doubt all the elements of the offense. The State having failed to do so, defendant asks this court to reverse the appellate court's decision on this issue and reverse his conviction for aggravated battery on count II.

¶ 37    The State responds that the evidence, viewed in a light most favorable to the State, established both that defendant committed battery and that he did so on or about public property. There was no question that the battery took place at Pontiac. Defendant admitted that he threw milk cartons containing a mixture of feces, semen, and urine at Eilers as Eilers was walking past defendant's cell at Pontiac. Jeremy Olson testified that he was employed by the Illinois Department of Corrections (IDOC) as an investigator at Pontiac and that he interviewed defendant at Pontiac during his investigation of the incident between defendant and Eilers. Defendant also testified that he was in the custody of the IDOC when he threw the bodily fluids at Eilers. The State argues that, based upon this evidence, a rational trier of fact could reasonably infer that Pontiac, a prison run by the IDOC on behalf of the State, which houses inmates in the IDOC's custody, was in fact a prison owned by the State.

¶ 38    While we agree with the State that it presented uncontested evidence that defendant's battery of Eilers took place at Pontiac, defendant is correct that the State did not present evidence concerning ownership of Pontiac, which is necessary to establish that Pontiac was public property. The fact that a battery occurred on public property is an element of the offense. However, we find no abuse of discretion in the appellate court's decision to take judicial notice of the State's ownership of Pontiac.

¶ 39    Illinois Rule of Evidence 201 provides that a court may take judicial notice of adjudicative facts at any stage of the proceeding. Ill. R. Evid. 201(a), (f) (eff. Jan. 1, 2011). This includes taking judicial notice for the first time on appeal. See *Dawdy*

*v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177 (2003) (" 'appellate court may take judicial notice of matters not previously presented to the trial court when the matters are capable of instant and unquestionable demonstration' " (quoting *Boston v. Rockford Memorial Hospital*, 140 Ill. App. 3d 969, 972 (1986))). The rule further provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Ill. R. Evid. 201(b) (eff. Jan. 1, 2011).

¶ 40　　　There is no question that the ownership of Pontiac is a fact that is not subject to reasonable dispute. The ownership of Pontiac is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. See, *e.g.*, Pontiac Correctional Center, Ill. Dep't of Corr., http://www2.Illinois.gov/idoc/facilities/Pages/pontiaccorrectionalcenter.aspx (last visited Nov. 9, 2022) [https://perma.cc/9MGF-94GS]. Courts frequently take judicial notice of public documents, including records from the IDOC. *People v. Johnson*, 2021 IL 125738, ¶ 54. Notably, defendant does not claim that Pontiac is not owned by the government. He simply argues that the State failed to prove that fact. Faced with a similar claim that the government failed to prove the Sangamon County Jail was public property for purposes of the aggravated battery statute, the Seventh Circuit Court of Appeals responded that the proposition was so "obvious that a detailed discussion of it by the parties would have been a waste of time." *United States v. Golden*, 843 F.3d 1162, 1165 (7th Cir. 2016).

¶ 41　　　The fact that the ownership of Pontiac was an element of the offense does not change our analysis. Our appellate court, as well as other jurisdictions, has held that a court could take judicial notice of a fact that is not subject to reasonable dispute, even when that fact constitutes an element of the offense. See *People v. White*, 311 Ill. App. 3d 374, 380 (2000) (court could take judicial notice of prior felony conviction, even though it was an element of the offense, because the doctrine of judicial notice includes facts readily verifiable from sources of indisputable accuracy); *Messenger*, 2015 IL App (3d) 130581, ¶ 33 ("Illinois courts, however, have regularly sanctioned the use of judicial notice to establish an element of the offense"); *Hill*, 409 Ill. App. 3d at 456 (court may take judicial notice of a fact even if that fact constitutes an element of the offense); *Broome v. United States*, 240

A.3d 35, 42-43 (D.C. 2020) (reviewing court would take judicial notice that hospital was a private building, even though that was an element of the offense); *United States v. Bello*, 194 F.3d 18, 23 (1st Cir. 1999) (trial court properly exercised discretion in taking judicial notice that the defendant's offense took place within the " 'special maritime and territorial jurisdiction of the United States,' " an element of the offense).

¶ 42 We agree with the preceding cases that a court may take judicial notice of an element of the offense where that fact is readily verifiable from sources of indisputable accuracy. As stated, there is no question that the ownership of Pontiac is such a fact. Under the circumstances, then, the appellate court did not abuse its discretion in taking judicial notice of the ownership of Pontiac and in finding that Pontiac was public property for purposes of the aggravated battery statute. We therefore affirm the appellate court's finding that the State presented sufficient evidence to satisfy the public property element in count II and in affirming defendant's conviction.

¶ 43                                   CONCLUSION

¶ 44 For all the foregoing reasons, we affirm the appellate court's judgment, which affirmed defendant's conviction and sentence.

¶ 45 Affirmed.

¶ 46 JUSTICE HOLDER WHITE took no part in the consideration or decision of this case.