NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 210678-U

NO. 4-21-0678

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 15, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| DONNELL L. ROBINSON, | ) | No. 21CF183 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Randall Rosenbaum, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*:  (1) Defendant was not denied a fair trial where a witness was allowed to repeat the victim's out-of-court statement.

(2) Allowing a witness to describe the victim's injuries he photographed was not error.

(3) Defendant was not denied a fair trial where a witness narrated the surveillance video for the jury.

(4) Cumulative error did not deprive defendant of his constitutional right to a fair trial.

¶ 2     Defendant Donnell L. Robinson was convicted of aggravated battery (720 ILCS 5/12-3.05(c) (West 2020)) and sentenced to four years in prison. On appeal, he argues that (1) the area in the county jail where the battery occurred is not public property as contemplated in the aggravated battery statute, (2) he was denied his right to a fair trial where a witness repeated the victim's out-of-court statements, (3) he was denied his right to a fair trial where a witness described

the victim's injuries as depicted in photographs, (4) he was denied his right to a fair trial where a witness narrated surveillance video, and (5) cumulative error in the proceedings requires reversal. We affirm.

¶ 3                              I. BACKGROUND

¶ 4        The State charged defendant with aggravated battery (*id.*) for allegedly attacking a fellow inmate of the Champaign County jail. As part of the precautionary measures outlined in *People v. Thompson*, 2016 IL 118667, the trial court held a pretrial hearing to determine whether Lieutenant Josh Sapp of the Champaign County Sheriff's Office, Corrections Division, would be allowed to identify defendant for the jury in the jail surveillance footage. The court found Sapp's proffered testimony highly probative and informative for the jury, and he was likely to correctly identify defendant. The court allowed the testimony over defense counsel's objection. At trial, the State called Sapp and his colleague at the sheriff's office, Gregory Hesselmann, to testify.

¶ 5        Sapp oversaw operations for the jail as well as investigations. According to Sapp, the Champaign County jail is a government-owned property, not a private jail. On February 9, 2021, he was alerted that an altercation had occurred between two inmates and that one of the inmates, Terry Porter, was the victim of the attack and sustained injuries. After learning of the altercation, Sapp reviewed surveillance footage from the cell block around the time of the incident. After laying the necessary foundation, the State moved to admit a digital copy of the surveillance footage from the time of the incident into evidence.

¶ 6        In preparing the jury to view the footage, Sapp explained that all inmates are locked in their cells during portions of the day and that the jail block defendant and Porter were in was a secure block, meaning inmates were confined to that jail block alone. Lockdown of the jail block ends at 8:30 a.m., at which time inmates are allowed to exit their cells and move about the secured

jail block. Through jail management software, Sapp was able to see the cell in which each inmate was housed and their mugshot. The jail cells were numbered, and defendant shared his second-floor cell, No. 2B25, with another individual. Porter's cell was on the first floor, No. 1B22, and he also shared his cell with another inmate. The State played a portion of the footage while Sapp explained what the jury was viewing. The video began at 8:31 a.m., when lockdown was just ending and all of the cell doors were shut. The video depicted the inside of a jail block. The surveillance camera was located in the upper corner of a rectangular room facing the cell doors. The camera was directly across from Porter's cell. There were two floors of cells, with the second floor having a catwalk with a railing and stairs at the far end of the room leading to the first floor. Sapp pointed out defendant's cell and Porter's cell for the jury. While defendant's cell number above the cell door was viewable, Porter's cell number was blocked from view by the catwalk. Sapp then identified defendant and his roommate outside of their cell heading down the stairs. Sapp explained that the individuals entering the frame of the footage on the first floor were defendant and his roommate, and he pointed out the location of Porter's cell. Porter's cell door remained closed, although it was not locked.

¶ 7     The State played the remaining portion of the video without commentary from Sapp. The footage showed defendant hovering around Porter's cell with a white paper bag in his hand. He looked into Porter's cell through the cell door's window numerous times while milling about just outside. His roommate remained nearby. A guard was in the jail block initially but left prior to the attack. Defendant sat at a payphone located two doors down from Porter's cell. Defendant appeared to make a call from the payphone. After finishing the phone call, defendant stood up, placed his drink on a nearby table, briefly conferred with his cellmate, and then entered Porter's cell with the bag still in hand. The cell door was left partially ajar, and defendant was visible through the cell

door's wire and glass window. Once inside the cell, defendant raised his hand above his head and struck downward with force on an individual lying beneath a blanket. Defendant had something in his hand during this downward motion. This motion was repeated a second time, and defendant then appeared to either knee or kick the individual underneath the blanket. Defendant exited the cell with an item in his hand, placed the item in the white paper bag, walked to the bottom of the stairs, and handed the bag to his cellmate. The cellmate returned to the cell on the second floor he shared with defendant. Immediately after defendant left Porter's cell, Porter's cellmate, a black man with no shirt on, can be seen approaching the cell door from the back of the jail cell. A heavyset, white male (consistent with later-admitted photographs of Porter) can be seen rising from underneath the blanket and looking out the cell window.

¶ 8        In reviewing the footage, Sapp did not see anyone else enter Porter's cell. Further, he believed that the item in defendant's hand at the time of the incident was a weapon. However, no weapon was found in a subsequent search of the jail block. The incident occurred at approximately 8:30 a.m., but went unreported until later that day; Sapp did not author his report on the incident until 4:12 p.m. On cross-examination, Sapp admitted that he did not watch all of the surveillance footage between the time the incident occurred and when he wrote his report.

¶ 9        Sapp also commented on two phone calls made from inside the jail. He listened to those calls: one by defendant and another by Porter. The topic of both calls concerned whether Porter was an informant or "snitch." Porter initiated the one call but then handed the phone to defendant to talk to an individual on the other end, claiming Porter was not an informant.

¶ 10       Hesselmann testified that on February 9, 2021, he was asked to photographically document the injuries suffered by Porter. The State showed Hesselmann the photographs he took of Porter, labeled as State's exhibits 2A through D. The photographs of the injuries were close-up

images, with no visible relation to what part of the body the images were depicting. Hesselmann explained what portion of Porter's body each photo depicted. When asked why he took the photographs, Hesselmann stated, "So, Mr. Porter told me that the injuries that you can see here, the two red spots, were spots that he had been, in his wording, 'stabbed.' " He went on to explain that the red marks were "bumped up about a quarter of an inch up off his regular skin. They were red and slightly swollen." The other photographs depicted "scratches of sorts" and a "combination of both scratches and pinpricks or the stab marks."

¶ 11        Throughout the remainder of the State's case and in closing arguments, prosecutors continuously claimed Porter was stabbed. After the State rested, defendant did not put on a case. During deliberations, the jury requested and was allowed to view the surveillance footage again. The jury found defendant guilty, and the trial court sentenced him to four years' imprisonment.

¶ 12        This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14        Defendant originally argued that the jail block in the county jail in which the attack took place is not public property as contemplated in section 12-3.05(c) of the aggravated battery statute (720 ILCS 5/12-3.05(c) (West 2020)). Recently, however, we granted defendant's motion to withdraw that argument based on the Illinois Supreme Court's decision in *People v. Castillo*, 2022 IL 127894, ¶¶ 33, 44 (subject to revision or withdrawal), where a similar argument was rejected.

¶ 15        Turning to defendant's remaining arguments, he contends that he was denied a fair trial because Hesselmann was allowed to repeat Porter's out-of-court statement that he was "stabbed." Further, he contends that he was denied a fair trial because Hesselmann described

Porter's injuries also depicted in the photographs and Sapp narrated the surveillance video for the jury.

¶ 16                    A. Investigative Procedure Exception to Hearsay

¶ 17          We turn first to defendant's argument that Hesselmann's testimony as to Porter's statement that he was stabbed exceeded the scope of the investigatory procedure exception to hearsay. Defendant claims that the hearsay statement violated his right to a fair trial where it invaded the province of the jury on an ultimate fact at issue. Defendant acknowledges that he failed to properly preserve this issue for review by objecting at trial and advancing the argument in a posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, he asks us to review his claim as either first-prong plain error or ineffective assistance of counsel.

¶ 18          At trial, the complained-of testimony was as follows:

          "Q. And why did you take this photograph?

          A. So, Mr. Porter told me that the injuries that you can see here, the

two red spots, were spots that he had been, in his wording, stabbed."

Hesselmann again referenced Porter's explanation of being stabbed in describing other photographs.

¶ 19          The State argues that the testimony of Hesselmann falls well within the investigatory procedure exception to hearsay. Further, the testimony was foundational and entered into the record without objection. Moreover, even if there was an error in admitting the testimony, it was harmless considering the overwhelming evidence against defendant. Specifically, the State claims the video evidence in this case shows defendant attacking Porter.

¶ 20          The first step in plain error review is to determine whether an error occurred at all. *People v. Birge*, 2021 IL 125644, ¶ 24. This step applies with equal weight to a claim of ineffective

- 6 -

assistance of counsel, as counsel's performance cannot be deficient where no error occurred. *People v. Hanson*, 238 Ill. 2d 74, 115 (2010).

¶ 21　　　　In analyzing the testimony of investigating or arresting members of law enforcement, courts of this state have pronounced that they should not be put in the false position of seeming to have just happened upon the scene of a criminal occurrence; they should be allowed some explanation of their presence and conduct. *People v. Cameron*, 189 Ill. App. 3d 998, 1004 (1989) (citing McCormick's Handbook of the Law and Evidence § 249 (3d ed. 1984)). To that end, the investigatory procedure exception to the prohibition on hearsay allows a member of law enforcement to "recount the steps taken in the investigation of a crime, and may describe the events leading up to the defendant's arrest, where such testimony is necessary and important to fully explain the State's case to the trier of fact." *People v. Simms*, 143 Ill. 2d 154, 174 (1991). The testimony may include "conversations with others, such as victims or witnesses, when such testimony is not offered to prove the truth of the matter asserted by the other, but is used to show the investigative steps taken by the officer." *Id.* "The investigatory procedure exception to the hearsay rule limits the officer's testimony for the purpose of establishing how the investigation was conducted and cannot be used to place into evidence the substance of any out-of-court statement or conversations offered for the truth of their contents." *People v. Jura*, 352 Ill. App. 3d 1080, 1087 (2004).

¶ 22　　　　The genesis of the introduction of Hesselmann's statement that Porter said he was "stabbed" was proper as it explained why Hesselmann proceeded to take photographs of the injuries. The testimony built on previously established prison protocol that investigations were initiated following stabbings. However, the State almost immediately began using the statement for the truth of the matter that Porter was, in fact, stabbed. The use of this statement by the State

- 7 -

to argue that Porter was stabbed was error. See *id.* at 1087. In rebutting defendant's contention of error, the State argues that it "was not required to show defendant 'stabbed' the victim." Indeed, this assertion lays bare the lack of a legitimate reason for continuously repeating this statement to the jury outside of the context of why the photographs were taken. See *People v. Boling*, 2014 IL App (4th) 120634, ¶¶ 117-18 (collecting cases) (noting that this court has repeatedly cautioned against using hearsay to explain the steps of an investigation).

¶ 23　　　　Nonetheless, this error does not warrant reversal under either the first prong of the plain error doctrine or a claim of ineffective assistance of counsel. See *People v. Sebby*, 2017 IL 119445, ¶ 51 (noting under first-prong plain error review, a defendant must show "the evidence was so closely balanced the error alone severely threatened to tip the scales of justice"); *People v. Cherry*, 2016 IL 118728, ¶ 24 (noting that to succeed on an ineffective assistance claim, a defendant must show a reasonable probability that the outcome of the proceeding would differ). The State argues that any error is harmless, but a court of review will only undertake a harmless-error analysis where the defendant has preserved the claim for appeal; where, as here, the argument has been forfeited, plain error is the appropriate analysis. *People v. Thompson*, 238 Ill. 2d 598, 611 (2010). Nonetheless, we agree with the State that the evidence in this case against defendant is overwhelming.

¶ 24　　　　In order to garner a conviction, the State needed to show that defendant knowingly, by any means, caused bodily harm to Porter, without legal justification, on or about public property. See 720 ILCS 5/12-3, 3.05(c) (West 2020). The surveillance footage shows defendant entering Porter's cell and striking downward with force multiple times onto Porter and then either kicking or kneeing him before exiting the cell. The jury viewed photographs of Porter's injuries.

Sapp testified that the jail was a government-owned complex. Defendant did not offer a legal justification for his use of force against Porter.

¶ 25    Defendant, in his reply brief, responds to the State's harmless-error argument, which applies with equal force to the determination of whether the evidence is closely balanced. He argues that the surveillance footage "was hardly the evidentiary *coup de grace* the State would portray it as." We disagree. Having viewed the footage, defendant is essentially asking this court to ignore what is plain to the naked eye. The footage clearly depicts defendant attacking a man identifiable as Porter in his cell. Given the surveillance footage, the evidence in this case was not closely balanced; and even absent the error complained of, there is no reasonable probability the outcome of the proceeding would be any different.

¶ 26                        B. Description of Photographs

¶ 27    Defendant also takes exception to Hesselmann's testimony describing the photographs of Porter's injuries when he was not present during the attack and was not a medical professional providing a diagnosis. Defendant contends the description of the photographs was unnecessary and went to an ultimate question of fact for the jury. Defendant again seeks to avoid his procedural forfeiture, claiming that the error was either plain or, alternatively, the product of ineffective assistance of counsel.

¶ 28    Illinois Rule of Evidence 701 (eff. Jan. 1, 2011) provides:

> "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the

determination of a fact in issue, and (c) not based on scientific, technical, or

other specialized knowledge within the scope of Rule 702.".

The exclusion or admission of evidence is a matter left to the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *People v. Hope*, 168 Ill. 2d 1, 43 (1995).

¶ 29 Defendant advances a three-pronged argument on this point: (1) Hesselmann was not a trained medical professional nor put on the stand as an expert in any medical field, (2) the testimony encroached on an ultimate question of fact reserved for the jury, and (3) the testimony was superfluous as Hesselmann was in no better position than the jury to explain what the photographs depicted.

¶ 30 Defendant relies on *People v. Jackson*, 2017 IL App (1st) 142879, for the contention that the complained-of testimony crossed the line from lay witness to expert testimony when a description of the injuries took place. In *Jackson*, a police officer was kicked by the defendant while "thrashing" around after being tased; the defendant might also have been suffering from a medical condition. *Id.* ¶ 27. At trial, two paramedics, as State witnesses, testified that the defendant was not having a seizure during the incident with law enforcement based on their observations. *Id.* ¶¶ 16-17. While both witnesses testified to their training as paramedics, only one testified that he received training on identifying seizures and provided no detail on that training. *Id.* ¶¶ 51-53. The appellate court held that the trial court erred in allowing the paramedics to render a medical opinion on whether the defendant was having a seizure. *Id.* ¶¶ 52-53.

¶ 31 Unlike in *Jackson*, Hesselmann did not render a medical diagnosis. He was merely relaying to the jury his own perception of the injuries that he photographed, in large part to explain why he photographed what he photographed. Also, unlike *Jackson*, Hesselmann did not purport to

rely on any specialized or technical knowledge gained through training or education. Further, Hesselmann contemporaneously observed the injuries when he photographed them, and his description was helpful to the jury, as will be explained below. See *infra* ¶ 33.

¶ 32 Moreover, based on the facts of this case, we reject defendant's contention that testimony going to an ultimate question of fact is *per se* improper. See, *e.g.*, *People v. Walker*, 2021 IL App (4th) 190073, ¶ 35 (rejecting a similar argument while relying on well-established supreme court precedent); Ill. R. Evid. 704 (eff. Jan. 1, 2011) (stating admissible testimony in the form of opinion or inference is not objectionable because it goes to an ultimate question of fact).

¶ 33 Defendant's final argument in this vein is that the testimony was superfluous, as Hesselmann was in no better position than the jury to explain what the photographs depicted. A review of the photographs refutes this assertion, as Hesselmann's description was helpful to the jury. The photographs of the injuries were taken at a point in relation to Porter's body where it was difficult to discern which portion of his anatomy the image depicted. Moreover, the photographs do not allow the viewer to appreciate the dimensional context that Hesselmann provided from his own perceptions. The description of the injuries was helpful to the jury.

¶ 34 Accordingly, Hesselmann's testimony was rationally based on his perception of the injuries, helpful to a clear understanding of the photographs, and not based on scientific, technical, or other specialized knowledge. The trial court did not abuse its discretion in allowing Hesselmann to testify to what he perceived when taking the photographs and what portion of the body the photographs depicted.

¶ 35 C. Narration of Surveillance Video

¶ 36 Next, defendant argues it was improper to allow Sapp to narrate the surveillance video where his commentary did not assist the jury. Specifically, defendant takes issue with two

aspects of Sapp's testimony: (1) the description of defendant's movement about the cell block and (2) the statement that only defendant entered Porter's cell. Acknowledging his failure to properly preserve this issue for review, defendant again asks that we review his claim under either first-prong plain error or as ineffective assistance of counsel. As we previously stated, for defendant to succeed under either plain error or ineffective assistance of counsel, there must be an error. *Supra* ¶ 20.

¶ 37　　The State argues that Sapp's testimony was presented to aid the jury in understanding the content of the video, as the jury was unfamiliar with the layout of the jail. Additionally, the testimony was foundational for the admission of the exhibits. Moreover, the testimony did not invade the province of the trier of fact, as the jury was free to disregard the testimony and reach its own conclusion regarding what the exhibits depicted.

¶ 38　　To be clear, defendant is not challenging Sapp's identification testimony that defendant was depicted in the surveillance footage. See *People v. Sykes*, 2012 IL App (4th) 111110, ¶ 30. Rather, he is challenging whether the complained-of portions of his testimony were admissible pursuant to Illinois Rule of Evidence 701 (eff. Jan. 1, 2011). While admission of evidence is normally a matter of trial court discretion, this particular issue is a legal one not involving discretion, fact-finding, or evaluation of credibility; consequently, our review is *de novo*. *Id.*

¶ 39　　Initially, we reject defendant's contention that the court erred in allowing Sapp to narrate defendant's general movements about the cell block. In *People v. Brown*, 2017 IL App (1st) 142197, an argument similar to defendant's failed on appeal. The court found that the complained-of testimony was "helpful to the jury" where numerous individuals entered and exited the frame. *Id.* ¶ 63. Here, there were multiple individuals exiting their cells and moving about the

jail block. The trial court in this case during the *Thompson* hearing echoed this sentiment, finding the testimony would be helpful to the jury. Further, "[a]n opinion as to what a video depicts is an opinion that a layperson could normally form from observing the video." *People v. Gharrett*, 2016 IL App (4th) 140315, ¶ 72. Because Sapp's testimony was rationally based on his own perceptions of the video and helpful to determine the identity of the individual that attacked Porter, the testimony was admissible.

¶ 40        We also are unable to fault the trial court for allowing Sapp's testimony that no one else entered Porter's cell during the footage. This was an opinion based on his perception of the surveillance footage, which he reviewed in detail as part of his investigation. See *id.* Furthermore, the jury watched the footage again during deliberations, free from any influence that Sapp's narration may have provided. In this instance, the jury had ample opportunity to reject any of Sapp's assertions that were not based on the video evidence.

¶ 41        Defendant also takes issue with Sapp's explanation of what happened to the white paper bag defendant handed to his cellmate. Although defendant describes the testimony as "contemporaneous," it was not elicited until after the jury viewed the surveillance footage. However, this argument fails for the same reasons expressed above. Sapp's explanation of the movements of the bag and the fact he believed a weapon was placed therein were based on his perceptions of the video and were helpful to a clear understanding of his testimony that the jail was searched for weapons following the attack and no weapons were found.

¶ 42        Even if the complained-of testimony constituted error, as discussed above, the evidence was not closely balanced and no reasonable probability exists that the outcome would be different absent this testimony. *Supra* ¶¶ 24-25.

¶ 43                         D. Cumulative Error

¶ 44    Defendant alleges that the cumulative impact of the testimony of Sapp and Hesselmann deprived him of a fair trial. "Individual trial errors may have the cumulative effect of denying a defendant a fair trial" where the errors create a "pervasive pattern of unfair prejudice to defendant's case." *People v. Hall*, 194 Ill. 2d 305, 350 (2000); *People v. Blue*, 189 Ill. 2d 99, 139 (2000). Whether a defendant's right to a fair trial has been compromised turns on a determination of whether the integrity, reputation, and fairness of the judicial process has been compromised. *People v. Bowens*, 407 Ill. App. 3d 1094, 1111 (2011) (citing *Blue*, 189 Ill. 2d at 138).

¶ 45    Defendant's trial strategy in this case was to convince the jury that there was enough time between the incident in the surveillance footage and the report to jail staff that Porter was attacked, that someone else could have attacked Porter, or that he could have sustained the injuries from something other than the recorded incident. Effectively, defendant did not argue he was not depicted in the surveillance footage clearly committing a battery, but rather that someone else may have also committed a battery on Porter later on. The jury was unpersuaded by this strategy and found him guilty.

¶ 46    After reviewing defendant's contentions against the record in this case, it is apparent that the integrity, reputation, and fairness of the judicial process were not compromised. The errors identified above did not create a pervasive pattern of unfair prejudice to defendant's case.

¶ 47                                III. CONCLUSION

¶ 48    For the reasons stated, we affirm the judgment of the trial court.

¶ 49    Affirmed.