2023 IL App (1st) 200311-U

No. 1-20-0311

Order filed April 28, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 2975 |
| | ) | |
| AARON CRAIG, | ) | Honorable |
| | ) | Maria Kuriakos-Ciesil, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE REYES delivered the judgment of the court.
Justices Burke and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Where the record fails to establish that defendant was eligible for extended-term sentencing, his seven-year prison sentences for possession of a controlled substance with intent to deliver and delivery of a controlled substance are vacated and the cause is remanded for resentencing.

¶ 2     Following a bench trial, defendant Aaron Craig was found guilty of one count each of possession of a controlled substance with intent to deliver and delivery of a controlled substance and sentenced to concurrent terms of seven years in prison. On appeal, defendant contends that the

trial court committed plain error in imposing extended-term sentences, or, alternatively, that trial counsel was ineffective for conceding that defendant qualified for extended terms. Additionally, defendant argues that the trial court penalized him for rejecting a plea offer, considered improper factors in aggravation, and imposed an excessive sentence. The State concedes that defendant was ineligible for extended-term sentencing. For the following reasons, we vacate defendant's sentences and remand for resentencing.

¶ 3    Defendant was charged by indictment with one count of delivery of a controlled substance, namely, less than one gram of cocaine, and one count of possession with intent to deliver a controlled substance, also less than one gram of cocaine. See 720 ILCS 570/401(d)(i) (West 2020).

¶ 4    During pretrial proceedings, the court expressed its understanding that defendant had rejected a plea bargain proposed by the State. The court told defendant that the offer would be "a lot less than if *** I find you guilty." Although the court did not know "what type of decision I am going to make because I don't know what the facts are," the court "need[ed] to talk to [defendant] about [the State's] offer to make sure that you understand everything clearly." The State then advised that defendant was charged with two Class 2 felonies and that his criminal history rendered the sentencing range for the charged offenses "extendable" but not "X mandatory." Defense counsel did not object.

¶ 5    The following colloquy occurred:

"THE COURT: So the minimum you are facing is 3 years, Mr. Craig, the maximum you are facing is 14 years if you get found guilty on these charges.

Did you know that?

THE DEFENDANT: Yes, ma'am."

¶ 6    The State then listed defendant's prior convictions and sentences and explained that, in the present case, it offered defendant four years in prison in exchange for a guilty plea. The court advised defendant that four years in prison was a "sweet deal" given his criminal history and prior incarceration. The court added that defendant had "every right" to proceed to trial, and the court did not know what its finding would be but, were defendant found guilty, his sentence would not be four years or less in prison. Defendant confirmed that he rejected the State's offer.

¶ 7    Because defendant does not challenge the sufficiency of the evidence to sustain his convictions, we recount the trial evidence only to the extent necessary to resolve the issues raised on appeal.

¶ 8    Chicago police officer Shayon Harris testified that on January 26, 2019, around 9:30 a.m., he conducted surveillance in an unmarked vehicle near Lake Street and Keeler Avenue. Harris observed defendant, whom he identified in court, standing in the middle of the street. Approximately three individuals approached defendant. They appeared to converse, looked down at their hands, and walked away. Harris believed them to be engaged in narcotics transactions, though he did not observe anything being exchanged. He informed his team members of what he observed and described defendant and his location. Officer Antrinius Andrews, the buy officer, arrived and followed defendant into an alley. A few minutes later, Andrews returned to his vehicle and contacted the team. Enforcement officers John Elstner and G.O. Rodan arrived and stopped defendant. Andrews then drove past and identified defendant as the seller. Defendant was arrested.

¶ 9    On cross-examination, Harris stated that he could not hear the conversations between defendant and the other individuals. He also could not hear the conversation between Andrews and defendant and did not see them exchange anything.

¶ 10    Andrews testified that he received a description of an individual "engaging in hand-to-hand transactions" around Keeler and Carroll Avenue. The description matched defendant, whom Andrews observed there and identified in court. Andrews followed defendant into an alley and negotiated for seven pieces of crack cocaine. He gave defendant $40 in prerecorded funds and received seven yellow-tinted plastic bags that each contained a piece of crack cocaine. Andrews returned to his vehicle and contacted the team. He then learned the team stopped defendant, so he drove past and identified defendant as the seller.

¶ 11    Andrews wore a recording device that filmed the transaction with defendant. The State published the footage, which Andrews narrated from the point that he entered the alley. This court has viewed the footage, which is included in the record on appeal but lacks audio. The events comport with Andrews' testimony, although no faces, drugs, or money are discernable.

¶ 12    Elstner testified that he received a description and location of the individual who "served" Andrews. Elstner drove to Keeler and Kinzie with Rodan and observed defendant, who matched the description and Elstner identified in court. Elstner approached defendant in the vehicle, lowered the window, and waved at him from about three feet away. He noticed suspect narcotics in defendant's left hand and informed Rodan, who exited the vehicle. Defendant attempted to run but slipped and dropped the narcotics. Elstner recovered a clear plastic bag with eleven smaller yellow bags inside that each contained suspect crack cocaine. Elstner arrested defendant. Andrews then drove past and identified defendant as the seller. On cross-examination, Elstner testified that he did not recover money from defendant.

¶ 13    The State entered a stipulation between the parties that Michelle Etheridge, a forensic chemist with the Illinois State Police Crime Lab, would have testified that she tested the contents

of the seven bags recovered by Andrews, which were positive for the presence of cocaine and weighed 0.6 grams. Etheridge also tested the content of 6 of the 11 bags that Elstner recovered, which were positive for the presence of cocaine and weighed 0.5 grams.

¶ 14    Defendant testified that on January 26, 2019, he sold scrap at a junkyard, purchased narcotics, and entered an alley to use them. Because he "only had so much" of the drugs, he did not sell them. Afterwards, he exited the alley and was arrested by police officers who said they observed him selling drugs.

¶ 15    On cross-examination, defendant stated that he purchased cocaine in yellow-tinted plastic bags. He denied being approached by an African American male and conversing in the alley. The State published the footage from Andrews's recording device. Defendant denied being the individual depicted in the video, who was wearing different clothing than defendant wore that day.

¶ 16    The court found defendant guilty on both counts. Defendant filed a motion for a new trial, which the court denied.

¶ 17    The presentence investigation report (PSI) reflected, in relevant part, that defendant had convictions for possession of a controlled substance in 1989 (6 months' probation), 1990 (consecutive terms of 2 and 3 years' imprisonment), 1999 (4 years' imprisonment), 2000 (2 years' imprisonment), 2002 (consecutive terms of 1 and 2 years' imprisonment), 2005 (2 years' imprisonment), and 2008 (2 years' imprisonment); aggravated criminal sexual assault in 1990 (7 years' imprisonment); unlawful use of a firearm in 1996 (3 years' imprisonment); battery/resisting a peace officer in 2009 (45 days in jail); and failure to register as a sex offender in 2014 (2 years' imprisonment) and 2017 (1 year's probation). For each offense, the PSI listed the date of arrest,

date of disposition, and custodial credit; however, the PSI did not include the date of release for any period of incarceration or the class of any offenses.[1]

¶ 18    At sentencing on January 16, 2020, the court inquired whether defendant was "X by background," and the State responded that defendant was not. The court also asked whether defendant was "extendable"; the State answered affirmatively. Based on that information, the court noted that defendant was "facing 3 to 15" years in prison. The State and defense counsel agreed.

¶ 19    In aggravation, the State recounted defendant's criminal background, noting that his 1996 conviction for unlawful use of a firearm was a Class 3 felony and that his 1989 conviction for aggravated criminal sexual assault involved a "violent offense." The State recommended six years in prison.

¶ 20    In mitigation, defense counsel emphasized that most of defendant's convictions were for nonviolent drug offenses resulting from cocaine abuse. Counsel indicated that defendant requested probation and treatment. Counsel requested the minimum of three years in prison with treatment.

¶ 21    In sentencing defendant, the court emphasized that although defendant had "a lot" of convictions for drug possession, this incident also involved "delivery of a controlled substance to an undercover police officer *** on a public street of this city." The court noted that defendant had numerous prior felony convictions, two of which involved violence or a firearm, and was subject to a minimum of 3 years and a maximum of 14 years in prison. Based on the evidence and defendant's criminal background, the court imposed concurrent terms of seven years in prison on each count.

---

[1] When the PSI interview occurred, defendant had a pending case for failure to register as a sex offender.

¶ 22     The court did not specify whether it imposed an extended-term sentence during the hearing or on the half-sheet; in the mittimus, the space designated for indicating whether an extended-term sentence had been ordered was left blank. Defendant filed a motion to reconsider sentence, which did not address his eligibility for extended-term sentencing. The court denied the motion.

¶ 23     On appeal, defendant first argues, and the State concedes, that the trial court erred in imposing extended-term sentences where the record did not show he was eligible. Defendant acknowledges that he forfeited this issue by not objecting at sentencing or raising it in his post-sentencing motion, but submits this court should review his claim for plain error. Alternatively, defendant alleges that trial counsel was ineffective for "wrongly conced[ing]" that defendant qualified for extended-term sentencing.

¶ 24     In order to preserve a sentencing claim for review, a defendant generally must object during the sentencing hearing and raise the issue in a post-sentencing motion. See *People v. Herndon*, 2015 IL App (1st) 123375, ¶ 24. Under the plain-error doctrine, a reviewing court may consider forfeited claims where a clear and obvious error occurred at sentencing and either "(1) the evidence at the sentencing hearing was closely balanced or (2) the error was egregious so as to deny the defendant a fair sentencing hearing." *People v. Ramirez*, 2017 IL App (1st) 130022-B, ¶ 16. "[M]isapplication of an extended term sentence may be reviewed under the second prong of the plain error doctrine." *People v. Johnson*, 2020 IL App (1st) 171638, ¶ 18. However, to prevail under either prong, a defendant bears the burden of proving actual error. *People v. Mudd*, 2022 IL 126830, ¶ 22. Without an error, there can be no plain error. *People v. Hood*, 2016 IL 118581, ¶ 18. Thus, the first step in a plain-error analysis is to determine if a clear or obvious error occurred. *People v. Reese*, 2017 IL 120011, ¶ 60.

¶ 25    Defendant was convicted of possession of a controlled substance with intent to deliver and delivery of a controlled substance, Class 2 felonies punishable by a non-extended prison term of 3 to 7 years and an extended prison term of 7 to 14 years. 730 ILCS 5/5-4.5-35(a) (West 2020). A defendant may receive an extended-term sentence after previously being convicted of the same class or greater felony within the last 10 years, excluding time in custody, when the charges are separately brought and arise from different series of acts. 730 ILCS 5/5-5-3.2(b)(1) (West 2020). The date of entry of the sentencing orders for the prior and present offenses are the relevant dates for determining the 10-year period. *People v. Lemons*, 191 Ill. 2d 155, 159-60 (2000).

¶ 26    The trial court's decision to sentence an eligible defendant to an extended term is reviewed for an abuse of discretion (*People v. Hardy*, 2020 IL App (1st) 172485, ¶ 71), but whether a sentence is authorized "is a question of law which we will review *de novo*" (*People v. Sims*, 2022 IL App (2d) 200391, ¶ 148 (internal quotation marks omitted)). However, "even when a sentence imposed under an incorrect sentencing range fits within the correct range, the original sentence must be vacated because the trial court relied on the wrong sentencing range when imposing sentence." *People v. Hall*, 2014 IL App (1st) 122868, ¶ 15.

¶ 27    As an initial matter, although the State concedes that defendant received improper extended-term sentences, we begin our analysis by examining whether the trial court actually imposed extended-term sentences. See *People v. Carter*, 2015 IL 117709, ¶ 22 ("As far as any arguable concession is concerned, it is well established that we, as a court of review, are not bound by a party's concession.").

¶ 28    Prior to trial, the State advised the court that defendant was eligible for extended-term sentencing. The court then asked defendant whether he knew the sentencing range would be 3 to

14 years' imprisonment; defendant answered affirmatively and trial counsel did not object. Later, at sentencing, the State and trial counsel agreed that defendant qualified for an extended term, which the court described as 3 years to 14 years or 3 years to 15 years in prison. The court then imposed concurrent prison terms of seven years, without expressly stating whether the sentences constituted the maximum nonextended term or minimum extended term.

¶ 29 Neither the mittimus nor the half-sheet specify whether the sentences were extended, but a fair reading of the trial court's comments before trial and at sentencing suggests that the court believed defendant qualified for an extended term and proceeded accordingly. The court's recitations of the sentencing range reflect the court accepted that defendant qualified for a sentence exceeding the standard 3 to 7 years' imprisonment for Class 2 felonies. See 730 ILCS 5/5-4.5-35(a) (West 2020). Moreover, the seven-year terms constitute the midpoint between the minimum nonextended term and maximum extended term. See *id.*

¶ 30 Having determined the trial court imposed extended terms, we next consider whether defendant qualified for extended-term sentencing.

¶ 31 On January 16, 2020, defendant was sentenced for the two Class 2 felonies. The only documentary evidence at the hearing was the PSI, which identified numerous prior convictions but only one conviction for a felony classified at Class 2 or higher—specifically, a conviction for aggravated criminal sexual assault, a Class X felony, entered on January 9, 1990. See Ill. Rev. Stat. 1987, ch. 38, ¶ 12-14. That conviction occurred 29 years, 11 months, and 28 days before sentencing in this case. As noted, the 10-year period for determining an offender's eligibility for extended terms is calculated using the dates of sentencing for the prior qualifying offense and the present offense, and is tolled by incarceration. 730 ILCS 5/5-5-3.2(b)(1) (West 2020); *Lemons*, 191 Ill. 2d

at 159-60. Thus, in this case, defendant would qualify for extended terms if the aggregate time that he spent out of custody between January 9, 1990, and January 16, 2020, did not exceed 10 years.

¶ 32   The PSI listed the date of arrest, date of disposition, custodial credit, and sentence imposed for numerous convictions that defendant incurred between 1990 and 2020. The PSI did not include the date of defendant's release following any period of incarceration or whether he qualified for and received good conduct credit. Without this information, the PSI "did not provide a complete record of the time defendant actually spent in custody." *People v. Young*, 2018 IL App (3d) 160003, ¶ 12. Consequently, the PSI did not establish that, excluding time in custody, the convictions now at issue occurred within 10 years of defendant's sentencing for aggravated criminal sexual assault such that defendant qualified for extended-term sentences.[2]

¶ 33   This court's decision in *Young* is instructive. In *Young*, the defendant was found guilty of burglary. *Id.* ¶ 3. The PSI listed several prior felony convictions, but omitted the dates that the defendant was taken into or released from custody. *Id.* ¶ 4. At sentencing in 2015, the trial court asked the parties whether a felony conviction from 2004 occurred within 10 years of the present conviction, excluding incarceration, such that the defendant qualified for extended-term sentencing. *Id.* ¶ 6. The State answered affirmatively, but explained that it had not obtained "an exact date of defendant's custody time" from the Illinois Department of Corrections (IDOC). *Id.* Defense counsel claimed to have "no knowledge" of whether defendant qualified for an extended

---

[2] Attached to defendant's brief on appeal are records for some of his prior criminal proceedings obtained from the website of the Circuit Court of Cook County. Additionally, this court has reviewed defendant's sentencing history on the website of the Illinois Department of Corrections (IDOC). See *Metzger v. Brotman*, 2021 IL App (1st) 201218, ¶ 27 (taking judicial notice of court records); see also *People v. Castillo*, 2022 IL 127894, ¶ 40 (taking judicial notice of information on IDOC's website). Like the PSI, the circuit court records and IDOC records list the dates of sentencing, the sentences imposed, and custodial credit for defendant's prior convictions. These records, however, similarly omit the end dates for defendant's periods of incarceration.

term, but thought "it's very, very close." *Id.* The trial court imposed an extended term of 12 years' imprisonment. *Id.* ¶ 7.

¶ 34    On direct appeal, the defendant argued that the imposition of an extended-term sentence constituted plain error. *Id.* ¶ 9. The majority agreed, explaining that where the record "does not contain any evidence of the time defendant spent in custody for his prior convictions," the trial court "erred in finding defendant to be eligible for extended-term sentencing." *Id.* ¶ 10. Therefore, the court vacated defendant's sentence and remanded for a new sentencing hearing. *Id.* ¶ 12.

¶ 35    The dissenting justice noted that the defendant did not argue that he was ineligible for an extended-term sentence, but merely that the record "does not clearly establish that he was." *Id.* ¶ 20 (Schmidt, J., dissenting). Thus, according to the dissent, the defendant "failed to establish any error in his quest to establish plain error." *Id.* ¶ 22. The dissent therefore posited that a "better approach" would be for the defendant to file a postconviction petition along with IDOC records "establishing [his] custody and parole date on the 2004 conviction." *Id.* ¶ 23. If the IDOC records established that the defendant did not qualify for an extended-term sentence, the defendant would have a "ready-made ineffective assistance of trial counsel argument coupled with prejudice that will no doubt succeed in a postconviction setting." *Id.*

¶ 36    Here, as in *Young*, the only documentary evidence presented at defendant's sentencing hearing did not establish that, excluding incarceration, less than 10 years had transpired since his last qualifying conviction. The record, therefore, does not affirmatively establish that defendant qualified for extended-term sentencing. Misapplication of extended-term sentencing constitutes second-prong plain error. *Johnson*, 2020 IL App (1st) 171638, ¶ 18. Thus, defendant's sentence must be vacated and the cause remanded for a new sentencing hearing.

¶ 37    In so holding, we acknowledge, as did the dissent in *Young*, that a postconviction petition would also be a proper vehicle for defendant to bring constitutional claims pertaining to sentencing and to develop the record. We note, however, that IDOC's website lists defendant's projected parole date as June 2, 2023. See *People v. Castillo*, 2022 IL 127894, ¶ 40 (taking judicial notice of information on IDOC's website). Therefore, in the interest of expediency, we vacate defendant's sentences and remand for a new sentencing hearing where defendant will have the opportunity to develop the record regarding the precise dates of incarceration for his prior convictions. As we remand for resentencing, we need not address defendant's additional claims of ineffective assistance and sentencing errors.

¶ 38    Finally, defendant contends that the trial court's remarks prior to trial and alleged sentencing errors necessitate remand before a new judge to "avoid the suggestion of unfairness."

¶ 39    A judge is presumed to be impartial, and the burden rests on the party claiming prejudice to overcome this presumption. *People v. Burnett*, 2016 IL App (1st) 141033, ¶ 56. Alleged erroneous rulings by a judge are not a sufficient basis to establish that a judge has personal bias for or against a party. *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002). The party claiming prejudice must provide evidence of the court's prejudicial conduct or personal bias. *Id.* Allegations of prejudice or judicial bias must be viewed in context and "evaluated in terms of the trial judge's specific reaction to the events taking place." *People v. Faria*, 402 Ill. App. 3d 475, 482 (2010). " '[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.' " *Gross*, 202 Ill. 2d at 281 (quoting *Liteky v. United States,* 510 U.S. 540, 555 (1994)). However,

" 'they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.' " (Emphases in original.) *Id.*

¶ 40    While discussing the State's plea offer to defendant, the trial court advised that the four-year prison term proposed by the State would be "a lot less than if *** I find you guilty." The court added that a four-year term was a "sweet deal" given defendant's criminal history, and were he found guilty, the sentence would not be four years or less in prison. The court explained that defendant had the right to trial, and the court did not know how it would rule following a trial.

¶ 41    Viewing the trial court's pretrial comments in context, we cannot say the court evinced bias or hostility that would warrant remand to a different judge. Further, to the extent the court mistakenly imposed an extended-term sentence, this was an error of law that does not merit reassignment on remand. See, *e.g.*, *Burnett*, 2016 IL App (1st) 141033, ¶ 57. Under these circumstances, defendant has not overcome the presumption that the trial judge was impartial. *Id.* ¶ 56.

¶ 42    For the foregoing reasons, we vacate defendant's sentences and remand for a new sentencing hearing.

¶ 43    Vacated and remanded; mandate to issue *instanter*.